We'll hear the, we'll next hear Phillips v. Generations Family Health Center. I want to, I'd like to address two issues. One is the imputed knowledge issue. The second, perhaps more important for me, is the transparency issue. Judge Bryant found that the- If I'm right, there's an extraordinary circumstances prong to what you must meet. Is that correct? There is an extraordinary circumstances prong. I have two responses to that. One is that I think in this court and in the Third Circuit, the circumstance itself of there being the disparity between the state law statute limitations and the FTCA requirements comes into play. And the courts, this court has even said it's an extraordinary circumstance in and of itself where the plaintiff timely sues in the wrong form. And I take in those cases to mean that that in and of itself is an extraordinary circumstance. The second extraordinary circumstance, I think, is the transparency issue. And this court has said that the fact that the government has not required these health centers to declare their deemed status in any public way, it also is an extraordinary circumstance. But on that point, isn't there a way to check whether the entity that is being dealt with, the medical services provider, has that federal affiliation? If you know to do so, then we can see, yes, there is. There may be some problems with the way that the website and the hotline were being administered. But if you know, I agree, if you know to do that and you have reason to do that, then there is a way. Now don't we, I mean, we have to operate as a court in the context of prior decisions. And you've got the AQC decision. And our court in the prior go-around, which I was on that panel, as you know, we stressed that the primary potential difference between this case and AQC is that whereas AQC law firm, I'm quoting, had ample reason to suspect that the defendant might be a federal employee based on the firm's past experience with similar situations, here there is noticeably less evidence, at least in the existing record, that the lawyers at Pigalis would have had any reason to suspect Generations Federal's status. So the case goes back. And what we now know is that Pigalis did have previous experience with a deemed federal health center. Under AQC, aren't we bound? How do you get around that? I don't think you're bound under AQC. First of all, in AQC, you said that, your reasoning was, one, we thought the government had provided publicly available sources of information. And that was one prong of your analysis. And the second prong was AQC's lawyers had reason to investigate. And they admitted knowing about the statute. They admitted knowing about the hotline. Neither of those circumstances... But here, wasn't there in your firm? There's no evidence. Excuse me, Your Honor. I'm sorry. There's no evidence that anybody in our firm knew anything about the hotline. Where is that evidence? It's not in the record. And this brings us back to the imputed knowledge issue. And I do want to speak to that in a moment. What about, there's a previous case, right, in the District of Connecticut, which explicitly discussed generation status, right? Martinez L. Rosario v. Hartford Health Care. Well, you know, I think this goes back to Judge Hall's question. Are there ways to determine whether this is a deemed entity? Yes, there are ways to determine that. One way would have been to look at the HRSA website and the resources, although they were imperfect at the time. One might be to do that type of search. Do a Westlaw search. I'm totally empathetic with your problem. I'm just saying we've got this prior decision, A2C, which says it is hard to understand why any lawyer, let alone a lawyer at a firm specializing in medical malpractice with specific prior acquaintance with this issue, would not investigate the federal nature of potential defendants as part of standard due process diligence in every medical malpractice case. I looked at the oral argument transcript from our last encounter with this case. One of the things that was mentioned during that oral argument was maybe the court got AQC wrong. I'm not saying this is the case to overrule AQC, but there are nuances in all of these things. This is a case where Judge Bryant has made this decision based on paper submissions. She did a lot of her own research. I've never met Judge Bryant. She's never encountered us. She has no idea what occurs within our law firm. If you look at the imputed knowledge issue, I was trying to think of what the example would be. I know a lot about bringing cases before the Human Rights Commission. I know a lot about Yellowstone injunctions, and I know a lot about some civil practice in North Carolina and in Connecticut. I don't share that information across the firm, and I'm not obligated to do that. Maybe you are. Let me give you an analogy that we deal with on a fairly regular basis. We are asked to decide whether typically police officers are aware of or should be aware that the acts that they have taken have been held to be unconstitutional. Frankly, the standard is in this circuit, if this circuit has said that act is unconstitutional, we could declare that a week ago an officer out on the street here who probably has no idea what we are saying is now charged with knowing that what he or she is doing is unconstitutional. Now, I did a fair amount of the kind of work that you guys do. I did some medical malpractice case. I did insurance defense. I don't see how one gets around essentially being charged with, if you're going to take on a case, being charged with meeting the standard of care that one taking on such a case has to meet. In ATC cases, sadly, I think in this case, you're charged with knowing who you're dealing with. So long as they're not, I think our case law suggests, so long as they're not trying to hide that. Well, I see that my time is running out. Please stay with me. Okay, thank you. Within reason. I don't think that the only inquiry. First of all, I really think that the imputed knowledge issue is important. I think it should be looked at. Nobody cited any authority in this case, including Judge Bryant, including the government, for the proposition that this information should have been shared across this group. And we know for sure that I didn't know anything about it, and we know for sure that the attorney of record, Mr. DeAngelo, who conducted the investigation in Connecticut, a member of the Connecticut Bar, we know for sure that he knew nothing about it. And I don't think we can impute knowledge to him. But can I ask you, just following up on Judge Hall's question, that if you hold yourself out or your firm holds itself out as a specialist in medical malpractice, doesn't it have some responsibility? How do you respond to the argument? That suggests it has some responsibility to know that certain defendants are likely to be deemed federal employees or at least look into it, at least do the research for it. How do you respond to that? Judge, I'm one of the directors of the New York State Trial Lawyers Association. I have been asked to do a CLE on this very topic. I said before, we said in our papers, the medical malpractice bar, as it exists in New York and in Connecticut, is a very cloistered bar. We deal with the same people every day. We deal with the same issues every day. It is a state court-focused practice. It always has been. What's happening right now is more and more of these health care facilities are coming on board with the deeming program. Back in 2009, 2010, I know what had been going on for years and years, but really, I did a survey. Mr. DeAngelo did a survey. Nobody knew anything about this. If you're talking about what the standard was for a competent medical malpractice lawyer back in 2009, 2010, 2011, nobody would have said I had a reason to suspect that we had to do this. It's hard to make an evidentiary showing of that based on the type of hearing we had. We had my declaration. We had Mr. DeAngelo's declaration. We were allowed to have a hearing. I'm not asking for a hearing. But that- That's the case. Is that something you would like to prove? I would like the opportunity to prove that. That question goes to you. Very honestly, I don't think we are going to get a fair hearing on that issue in the forum that we're in. I didn't want to bring that issue up, but we seem to come up against a wall here. We have the judge doing all of her own research and coming up with her own issues. Well, we're all supposed to be doing some of our own research. Let me ask you, are you suggesting that essentially the standard of care for an attorney malpractice suit is the standard by which Judge Bryant had to decide whether you get a pass for missing the statute of limitations or missing the issue that gives rise to the statute of limitations? Because it sounds to me like that's what you're saying. Nobody was doing this, and therefore, nobody should have to have done that. Now we know, and so going forward, there's a new standard of care. It seems to me odd. I have trouble equating essentially what I'll say is the malpractice standard, not meaning to imply anything, and what might be a heightened standard if one is holding oneself out as able to take on these cases and missing a key issue for some medical service. I guess what I'm really saying, no, I'm not saying that. I think actually the court is holding us to a different standard. And shouldn't it? Well, the issue here is my client, Dr. Phillips, is seeking equitable relief. Okay. The issue is were the Cato family and were the lawyers acting with reasonable diligence throughout the period that sought to be told? The tolling period, in effect, is the period between April 27 and June 30 of 2011. And the facts in the case are that there was documented reasonable diligence throughout that period of time, equivalent to what the court looked at in Santos. The issue becomes, and it implicates me and it implicates Mr. DeAngelo, whether we should have known about something that we didn't know about during that period of time. In one sentence, if you wanted us to focus on one thing that Judge Bryant, in your view, did wrong, what was that? Imputing? I think that Judge Bryant gave excessive weight to the issue of imputed knowledge and did not give appropriate consideration to the strong evidence of the government's lack of transparency and the now-declared government policy not to provide that transparency as seen in Suminer's deposition. You also take and have a problem with the fact that the prior panel said that Ms. Cato's family had been diligent in pursuing the claim and the district court said, I still disagree with you. I disagree with the court of appeals. I'm not quite sure how to respond to that. I don't know why Judge Bryant had to add her view about the Cato family into the mix in her decision. To help you, Judge Katz, with this question, I took to be a softball. That was a softball. Well, it was a softball, but she shouldn't have been considering that. I think she was obsessed with the issue. She went on for a four-page narrative which has no basis in the record whatsoever. She was assuming what these people in the Pacific and in Georgia and in Connecticut were doing without any information or any knowledge whatsoever about them. I'm sorry to drag this on, but I think it was a knuckleball is what the problem was. I'm used to it. But you said, almost in passing, you talked about the district judge doing her own factual research. Now, that can mean a whole lot of different things. It can mean going on to Google and finding out what deemed means or something like that. But what did you mean when you say she did her own? Well, she looked up cases. She went to the general cases. Legal cases? Legal cases. When she went to the PACER docket reports, she looked at the Generations family website as it exists today, where now they disclose that they are federally funded. But in looking at cases, for example, if she found a case from a number of years ago where Generations is discussed, isn't that something that ñ why is that inappropriate? She's trying to figure out what it is that your firm should have done. And so she's trying to see, well, if you go online, this is what you can find out. We don't go look at other cases when we're evaluating a medical malpractice case. Basically, we look at the medical records, we talk to the clients, we speak to our experts. That's how we do our research. We don't say, oh, maybe they've been sued before. It's not admissible anyway. Okay. Thank you. You'll have a few minutes in rebuttal. Thank you. May it please the Court. David Nelson for the United States of America at Generations Family Health Center. There isn't an extraordinary circumstance in this case because this is a known issue since 1992, when the federal health centers began to come into play, and from 1995, when they were further ratified. This has been something that's been mentioned by courts for years and years. You have to agree, I don't want to sort of relitigate the prior case, but there is a trap here. There is a lack of transparency, arguably, on these websites. It's not as clear as you might make it. It's not as clear as I might prefer it, Your Honor, as a litigator. It's as clear as the government might choose to make it because the more the government instructs a grant recipient as to how it should conduct its business on the website, on each individual step that they go farther and farther in the instruction, the more we open ourselves up to liability as not just a grant funder, but rather someone who's giving instruction and they become a contractor. So I can sit here as a litigator and say we have told. Just on that point, what's the net end result of that? It doesn't strike me as anything different. I mean the government, if the defendant has to be sued under the Federal Tort Claims Act, the government's on the hook for it. No, I'm sorry, Your Honor. It was unclear. What I was trying to explain was that the more the government dictates, right now under the Federal Health Centers Act, government can only be sued for medical malpractice. So if we were to go to a health center slip and fall, that's not the government. The more the government takes each individual step to dictate to that health center how it should be run, the more likely they are to become an independent contractor and be subject to general liability as opposed to just for – I apologize, Your Honor. Addressing the idea that it's a trap, the problem with the plaintiff's argument is that the very cases they cite where this court has been critical at Valdez, Celestine, of the fact that this is how the system is set up, are the very cases that would inform the bar, and Celestine's 2005, Valdez's 2008, that would inform a reasonable attorney practicing, especially in medical malpractice, that this is something that they should look at. Furthermore, the Sakiv case, which was not generated by the district court on our own. It was something we cited in our motion papers, and the court just did further research on that Sakiv case. The Sakiv case was from 2005.  It was removed, dismissed. They then – Hegelis, when I say they – went back through, filed an administrative claim. It was a $100 million case involving an infant. So this is not a minor case. I would imagine it's not a minor case. I'm not in private practice anymore. But this is not a minor case in any sense of the word. So in 2006, they refiled that case against the United States, having gone through their administrative exhaustion process. Now the district court, when it imputes knowledge to the attorneys in this firm, is not relying on some sort of per se rule. What the district court did was carefully consider the facts of this case, insofar as Hegelis is not a big firm. It's a firm that specializes in medical malpractice. It's a situation in Sakiv where an accident occurred or a mistake occurred which would warrant disclosure to the counsel in the firm. And it's a discovery of a new area of law, at least as counsel argues, that no one knows about this, this is something we didn't know about. So that would all the more warrant disclosure to other members of your firm, especially if the firm specializes in medical malpractice. The inquiry of other members of the firm, does that mean you have any experience here? Correct, Your Honor. The additional thing, to turn to AQC for a moment, is that this case is we know that AQC doesn't stand for now a per se rule, but this case is tremendously like AQC in several different ways. Now, in the record in this case we have at page 287, starting at page 278, but 287 is where it starts to get much more into detail, we have the affidavit from the attorney that litigated AQC. That was part of the record below. And so what do we see in AQC in this case? In both AQC, as demonstrated by the affidavit at page 287, they got the medical records, that's what they did here. In AQC, we see on page 288, they searched the state website, the state corporate website to find out the corporate identity. In both AQC and here, they got an expert to look at the records. AQC had an internal nurse, Peglas, got an expert for this certificate of good faith. In both AQC and here, they didn't look at the HHS website. They didn't do any of these things. And in both AQC and here, the firm had prior experience with this issue. So not to say that this case court is bound by AQC, but AQC certainly is the best fit for this case. The facts are almost identical as we've now had a chance to reestablish them and develop them after remand. And the idea that Santos should somehow control doesn't make any sense because Santos, beyond the fact that it's a Third Circuit case, in Santos, the plaintiffs affirmatively reached out and made contact with the health center. That didn't happen here. There was no, for example, pre-suit demand. There was no demand for insurance information. Any one of these inquiries, there's no demand to generations, had they been aware of this issue, that are you a deemed health center. There's no misrepresentation by generations. In fact, there's nothing where they reach out to generations at all, which is different than what happened in Santos. And there's a lot of reasons, quite frankly, why you'd want to do that, some of the ones I just mentioned, and also reasons why an attorney would want to check Westlaw or Pacer to determine whether the generations has been sued before. For instance, you might want to know who counsel is to figure out service of process. You might want to know what experts they've used. You might want to know what kind of claims they've brought. They might want to know if the court has found them to be grossly negligent or sanctioned them for discovery. There's a whole host of reasons why an attorney would want to check that. Now, the tricky thing in this case is that any of these things could have been done at any point in time throughout the lifespan of this case. Now, we know that throughout the lifespan of this case prior to filing. Sorry, Your Honor. At the moment Ms. Cato consults with Pegalus, they know that at least there might be a potential claim against generations, and as this court previously found, the claim accrued in April of 2009. Whatever difficulties Pegalus had in terms of reviewing medical records because of difficulties in establishing an executor, none of that impacted their ability to determine the proper defendant. None of the records researched, none of determining what the cause of action impacts their ability to do the diligence on who the proper defendant is. This court said in page 145 of AQC that half of the diligence is figuring out the cause of action, and the other half of the diligence is figuring out what's the form, who's the proper defendant, what procedure rules there are. Those could have been done at any point during the two and a half years they had to look at this case, Your Honor. So when we think about the time that Pegalus had, it was an incredibly expansive time to do something that, quite frankly, had they at least looked on Wessler and Pacer, it would have taken minutes to find this out, beyond the fact that this was something this court had alerted the bar to several times over the years coming into it. Let me ask you this. As you know, we differed with the district court's finding that the Cato family had not been diligent in pursuing the claim. It then goes back on reband, and the district court persists in its view and disagrees with the view of the Court of Appeals. What do we do with that? How do we factor that into our analysis, or do we? You don't, because it's not necessary to resolve the issue which was remanded, which was, was Pegalus diligent, and was there an extraordinary circumstance? It's not necessary to resolve the issue of, did Pegalus have prior experience with this? You're saying it's not law of the case, I suppose, and not binding on the district court on remand? This court's opinion that the family was diligent. I think that the court's observation on Phillips 1, for lack of a better term, is the court's observation. I think the district court's disagreement is dicta, because it does not impact the holding in any way, shape, or form. There are reasons why I think the district court might have wanted to say that, but it's not in the record. I can give you my opinion, but it wouldn't be. There's nothing in the record that I could point to as to why the district court felt the need to add that dicta. Let me ask you. My understanding of essentially the law analyzing diligence is you have the party's diligence and you have the attorney's diligence, and either one lacking diligence will defeat the effort to get equitable relief and get around the statute of limitations. That's correct, Your Honor. Especially in this case, it's actually especially clear, because no party would be expected. I don't think there's any expectation that a medical malpractice plaintiff comes into a law firm that specializes in medical malpractice and the plaintiff herself or himself would be expected to figure out the proper defendant and the proper procedural mechanisms. I think in this case we're really solely looking at the diligence of the attorneys. At that, in Phillips 3 or wherever we're at. Yes. If there are no further questions, I'll rely on my brief. Thank you. Thank you, Your Honor. Mr. Nielsen, you now have two minutes. Can I take a minute of your time and add a minute? I'm just a little hung up on this whole question of the question of fact. Of course, there are all kinds of things judges can do, and if you're talking about a fact being the existence of cases, that's fine. On the other hand, what's in the back of my mind, and a little disturbing, is let's . . . supposing you have a . . . it's an automobile accident and it's diversity, and we're in federal court. While the judge is trying to decide the motion for summary judgment, the judge says, gee, I wonder what . . . and gets into his or her car, goes to the scene of the accident, looks at the corner there, says, gee, that guy, he couldn't possibly have seen that coming, goes back, and then makes a decision which is based in part, or may be based in part on this personal observation of the accident scene rather than the evidence, the testimony before the court. Now, that would be improper. I more than speculate. There's case law in the court that that would be improper. Are you saying that the district court judge in this case did something that's analogous to that or not? The inquiry into whether there was reasonable diligence is an inquiry into the facts of the case. The facts were totally presented to this judge through declarations and exhibits and deposition testimony that was submitted by the government. I don't think there was any evidence from any witness or person who says that reasonable diligence, some expert on reasonable diligence . . . I'm just talking about going and getting facts on your own as a judge. The only answer to that is I've been practicing for 35 years and sometimes it rubs me the wrong way when I see something like that coming in where, well, you didn't think of this and you didn't think of that and it's not really part of the case and it becomes part of the case. I think it's totally within, Judge, let me be clear, I think it's totally within Judge Bryant's prerogative to do that. But I did have to express my frustration with the issue. Is that clear? Yes. Okay. Please, that was my . . . We'll give you two minutes to . . . I'm not sure I even need two minutes. The mandate to Judge Bryant was to consider many factors. That's what this court said. Go back and consider all these factors. Consider the transparency issue. Consider the reasonableness of the disclosures and the Generations website. Consider the operation and function of the HRSA website and hotline and a few other issues. Our argument is that almost every single issue that this court asked that court to consider, ultimately, Judge Bryant essentially found in our favor, with the exception of this issue about imputed knowledge. She said Nielsen and D'Angelo didn't know anything about this, but for the fact that this other person had a case back in 2004 and 2005, that would be sufficient. That's what she said. Really, that part of the case does hang on that issue, but in my 54 seconds that are left, when I stood before this court back in 2013, two-thirds of the questions and two-thirds of the discussion in that session had to do with this issue of government transparency. We learned in this case that not only was it not exercised here, not only did the Generations not provide that deeming information to anybody, but it turns out that it is concrete government policy not to do that. We know that from the deposition of Sumner. I submit that that's very, very important. It addressed the prime issue that this court was concerned with three years ago. I think that wasn't given adequate weight by Judge Bryant in her determination. Thank you. Thank you both for your arguments. The court will reserve decision. Thank you.